UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
www.flsb.uscourts.gov

| | |
|---|---|
| In re: | Chapter 11 |
| CINEMEX HOLDINGS USA, INC., | Case No. 20-14696-LMI |
| Reorganized Debtor. | (Formerly Jointly Administered Under Lead Case: Cinemex USA Real Estate Holdings, Inc., Case No. 20-14695-LMI) |
| _____/ | |

**JOINT PRETRIAL STIPULATION**

In accordance with the Order Setting Requirements for Evidentiary Hearing by Video Conference and Establishing Related Deadlines (Case No. 20-14695-LMI, ECF No. 1032) and the Court's direction on May 20, 2021, Cinemex Holdings USA, Inc. (the "Reorganized Debtor") and the Khan Parties[1] stipulate to the following facts as admitted and requiring no proof at trial, and outline the disputed facts and law applicable to the disputed Objection to Claim (Case No. 20-14695-LMI, ECF No. 482):

**I.  STIPULATED UNDISPUTED FACTS**

In accordance with the Order Setting Requirements for Evidentiary Hearing by Video Conference and Establishing Related Deadlines (Case No. 20-14695-LMI, ECF No. 1032), Cinemex Holdings USA, Inc. (the "Reorganized Debtor") and the Khan Parties stipulate that the following facts are admitted and require no proof at trial:

1.  Star Cinema Grill ("SCG") is a Houston-based dine-in movie theater company owning the equity interests in nine dine-in theatres in Texas, one in Illinois. One dine-in theatre

---

[1] The Khan Parties are: Omar Khan ("Mr. Khan"), S.C.G.C. Inc., S.C.G.M. Inc., SCG-B Inc., SCG-VP Inc., District Theaters Inc., SCG-WR LLC, SCG-CS Inc., SCGK Inc., SCG-CS Inc., SCG-WL Inc., and SCG-N Inc. (the "Companies").

in Texas is in the development stage.

2. Each dine-in theatre is owned by a separate corporation or limited liability company wholly owned by Mr. Khan.

3. In early December 2019, the Khan Parties hired PJ Solomon, an investment bank and financial advisor, to advise on and possibly conduct a process for the sale of Khan's equity interests in the Companies.

4. In December 2019, Mr. Rich Brail of PJ Solomon contacted José Marti, then President and CEO of Cinemex USA Holdings, Inc. and its subsidiaries, Delaware corporations that own and operate movie theaters in the United States ("Cinemex"), to inquire as to whether Cinemex was interested in a possible purchase of 100% of the equity in the Companies.

5. On December 19, 2019, PJ Solomon sent Cinemex the "Phase I Process Letter" providing it with a confidential information memorandum and soliciting a non-binding offer.

6. On January 14, 2014, Cinemex made a non-binding offer of $87.5 million.

7. On January 15, 2020, PJ Solomon invited Cinemex to provide names for access to the virtual data room.

8. On January 21, 2020, Cinemex provided a list of names for access to the data room.

9. PJ Solomon provided those personnel designated byCinemex with access to a data room. A proposed equity purchase agreement prepared by the Khan Partie's counsel was included in the virtual data room.

10. On February 5–6, 2020, representatives of Cinemex traveled to Houston for management meetings and tours of all of the Texas theaters. The Cinemex representatives that attended the management meeting were Luis Castelazo, CFO, Javier Ezquerro, COO, Ximena Carreno, General Counsel, Alejandro Muhech, head of construction, Rogeio Velez, CEO, and

Jose Marti, chief development officer. Not all of those individuals attended all of the tours.

11. On February 18, 2020, PJ Solomon circulated a Phase II Process Letter to all potential purchasers. soliciting binding offers by noon on March 3, 2020. .

12. On March 3, 2020, Cinemex made a binding offer of $75 million.

13. On March 6, 2020, Cinemex increased its binding offer to $83 million. On March 6, 2020, the parties entered into an exclusivity agreement, whereby the parties agreed to negotiate exclusively through 11:59 p.m. on March 10, 2020.

14. On March 10, 2020, SCG and Cinemex USA Real Estate Holdings, Inc. and Cinemex Holdings USA, Inc. entered into two equity purchase agreements with the Khan Parties whereby Cinemex would purchase 100% of the equity held by Mr. Khan in the Companies (the "Agreement"). Neither CB Theater Experience LLC ("CB") nor Grupo Cinemex S.A. de C.V. ("Grupo") is a party to either equity purchase agreement.

15. That same day, on March 17, 2020, Cinemex put travel restrictions in place for its employees. On March 24, 2020, the Khan Parties' counsel sent Cinemex's counsel an email asserting that "each of the Buyer's closing conditions set forth in Section 8.1 of the EPA had been satisfied" and "the Closing is to take place no later than the 2nd business day following the satisfaction(or waiver) of the closing conditions set forth in Article 8 of the EPA."

16. That same day, Cinemex's counsel responded, indicating that "[a]mong other things, Cinemex's operations and finance teams lack pre-Closing access to the Star Cinema Theaters and the Corporate Employees managing those theaters."

17. On March 25, 2020, the Khan Parties' counsel served on Cinemex a letter.

18. On March 26, 2020 Cinemex's counsel responded by letter.

19. On April 1, 2020, Mr. Khan and the Companies filed a verified complaint in the U.S. District Court for the Southern District of Texas.

## II. DISPUTED FACTS TO BE LITIGATED

In accordance with the Order Setting Filing and Disclosure Requirements for Pretrial and Trial, the Reorganized Debtor and the Khan Parties stipulate that the following are disputed facts to be litigated:

1. Whether the Phase II Process Letter PJ Solomon circulated to all potential purchasers on February 18, 2020 indicates that "[i]nspections are expected to occur *after* signing of an Agreement." Debtors' Ex. 23 (emphasis added).

2. Whether the Agreement provided that the parties had until April 30, 2020 to close the transaction for the ten Texas companies, and until May 31, 2020 to close the transaction for the one Illinois company. Debtors' Exs. 51, 52.

3. Whether on March 17, 2020, SCG announced that it would be temporarily closing all SCG Theatres "in accordance with local government direction and recommendations." Debtor' Ex. 41

4. Whether as of March 24, 2020, or any date thereafter, a physical inspection had occurred.

5. Whether on or about March 20, 2020, Mr. Khan offered to provide Cinemex a discount on the final price to proceed to close without a physical inspection.

6. Whether COVID-19 had a Material Adverse Effect based on the terms of the Agreement.

7. Whether COVID-19 was excluded or carved out from any determination of a Material Adverse Effect under the Agreement.

8. Whether SCG provided Cinemex with "reasonable access to and the right to inspect all of the properties, assets, premises, books and records, contracts, agreements and other documents and data related to the Company Group" as provided in Section 7.2 of the Agreement.

4

9. Whether SCG provided Cinemex with reasonable access to interviewing and transitioning employees.

10. Whether any or all of the express or implied conditions precedent to closing were met.

11. Whether any or all of the conditions precedent to closing were satisfied, waived, or excused.

12. Whether Cinemex used "reasonable best efforts" to cause the closing conditions to be satisfied as contemplated by Section 7.4 of the Agreement.

13. Whether Cinemex used "commercially reasonable efforts" to cause the Closing to occur.

14. Whether the exceptions or carve-outs to the Material Adverse Effect clause prevented the failure of any condition to Closing.

15. Whether the exceptions or carve-outs to the Material Adverse Effect clause prevented, waived or excused any condition to Closing.

16. Whether Mr. Khan or the Companies were excused from any of the Covenants under Article 7 of the Agreement.

17. Whether the Khan Parties provided Cinemex reasonable access as provided for under Section 7.2(A).

18. Whether Cinemex frustrated any closing conditions, warranties, or other requirements of the Agreement.

19. Whether the Khan Parties frustrated any closing conditions, warranties, or other requirements of the Agreement.

20. Whether the Khan Parties used reasonable efforts to cause the closing conditions to occur as required by the Agreement.

21. Whether Cinemex had a right to inspect the premises prior to and/or at Closing.

22. Whether Cinemex had a right to a physical closing in Houston.

23. Whether a physical closing in Houston was a condition to Closing.

24. Whether the lack of a physical closing justified a material breach of the Agreement.

25. Whether the representations and warranties contained in Sections 5.16 and 5.7 of the Agreement were satisfied in light of Section 7.4 of the Agreement or excused under Article 8.

26. Whether Cinemex had reasonable access to and the right to inspect within the meaning of Section 7.2(A) of the Agreement.

27. Whether Cinemex used reasonable best efforts to cause any conditions to Closing to be satisfied.

28. Whether Cinemex had reasonable access to Corporate Employees in light of Section 7.9(A) of the Agreement.

29. Whether any exceptions or carveouts to the Material Adverse Effect clause prevented any failure of closing conditions or alleged breach of any representation and/or warranty.

30. Whether any exceptions or carveouts to the Material Adverse Effect clause excused any failure of closing conditions or alleged breach of any representation and/or warranty.

31. Whether Cinemex is entitled to rely on any failure of any condition in light of Section 8.3 of the Agreement.

32. Whether the Khan Parties used commercially reasonable efforts as contemplated under Section 7.1(A) of the Agreement or whether any such obligations were excused.

33. Whether the Khan Parties used commercially reasonable efforts as contemplated

under Section 7.1(A) of the Agreement or whether any such obligations were waived.

34. Whether any travel restrictions lawfully prevented Cinemex from traveling to Houston.

35. Whether the Khan Parties satisfied the representations and warranties contained in Section 5.16 of the Agreement because of limitations on the "Company Group Permits" or were excused.

36. Whether the representations and warranties contained in Section 5.16 of the Agreement were excused, satisfied, or waived.

37. Whether the Khan Parties satisfied the representations and warranties contained in Section 5.16 of the Agreement requiring that they operate the theaters and "carry on [their] business" or were excused.

38. Whether the representations and warranties contained in Section 5.16 of the Agreement were excused, satisfied or waived.

39. Whether the Khan Parties satisfied the condition precedent that the representations and warranties contained in Sections 5.7 and 5.7(F) of the Agreement were true and correct as of the closing in isolation and in light of Section 7.4 or excused under Article 8 of the Agreement.

40. Whether any inability of the Khan Parties to operate the theaters, layoffs of employees, and unique characteristics had a "Material Adverse Effect," as defined by the Agreement, and whether the Khan Parties provided reasonable access to property and employees, as required by Sections 7.1, 7.4 and 7.9 of the Agreement.

41. Whether the Khan Parties satisfied their obligations to affirm as truthful each and every of their representations and warranties, as required by the Agreement.

42. Whether the Khan Parties' failure to affirm as truthful any representations and warranties as of the time of closing had a "Material Adverse Effect," as defined by the

7

Agreement.

43. Whether the Khan Parties' representations and warranties were true at the time of the closing.

44. Whether the representation that the Companies were authorized to operate their business and no "Material Adverse Effect" ("MAE") as defined in the Agreement had occurred was true at the time of closing.

45. Whether the representation that the Companies were authorized to operate their business and no "Material Adverse Effect" ("MAE") as defined in the Agreement had occurred was true at the time of closing or was otherwise satisfied, excused, or waived.

46. Whether the proximate cause of any loss of revenue, damages, or other recognizable claim incurred by the Khan Parties resulted from events or actions other than the alleged breach of the Agreement by Cinemex such as government-issued travel restrictions, closure orders, stay-home orders, management failures, failure of mitigation, adverse credit histories for the Khan Parties, excessive leverage or debt, negative credit history, involuntary liens, tax liabilities, or other attributes of Omar Khan as the sole owner of the Companies.

47. Whether any loss of goodwill or standing in the marketplace incurred by the Khan Parties was caused by the Khan Parties' involvement in extra-contractual events and circumstances such as but not limited to lawsuits alleging that the Khan Parties violated federal labor laws, misused insurance proceeds from Hurricane Ike, government-issued travel restrictions, closure orders, Omar Khan's flamboyant lifestyle, or stay-home orders.

### III.     ISSUES OF LAW TO BE LITIGATED

In accordance with the Order Setting Filing and Disclosure Requirements for Pretrial and Trial, the Reorganized Debtors and the Khan Parties stipulate that the following are issues of law to be litigated:

1. Whether the necessary conditions precedent to closing under the Agreement were satisfied, waived, or excused.

2. Whether Cinemex repudiated the Agreement.

3. Whether Cinemex breached the Agreement.

4. Whether the Khan Parties satisfied Section 8.1(A) of the Agreement as a condition precedent to closing.

5. Whether any of the conditions precedent to closing under Section 8.1 of the Agreement were excused and/or waived.

6. Whether the Khan Parties satisfied Section 8.1(B) of the Agreement as a condition precedent to closing.

7. Whether any supplements to the Agreement amended the Agreement under Section 12.10 of the Agreement.

8. Whether "Company Group Permits" includes any governmental order to limit gatherings of not more than 10 people.

9. Whether the exceptions or carveouts to the Material Adverse Effect provision prevent any violation of any representation or warranty under Article 8 of the Agreement.

10. Whether any performance owed by the Khan Parties was excused by the Debtors' repudiation and/or breach.

11. Whether the parties satisfied Section 7.4 of the Agreement as a fundamental undertaking as well as a condition precedent to closing.

12. Whether Section 3.1 of the Agreement provided Cinemex with the right to physically close in Houston.

13. Whether a physical closing in Houston was a condition to Closing.

14. Whether a physical inspection at closing was a condition to Closing.

15. Whether the carve outs to the Material Adverse Effect clause in the Agreement prevent a determination of frustration of purpose or impossibility of performance.

16. Whether Cinemex was obligated to Close no later than the second Business Day after satisfaction or waiver of the conditions set forth in Article 8 of the Agreement.

17. Whether Cinemex was entitled to a physical inspection at Closing under Section 3.2 of the Agreement.

18. Whether Article 3 of the Agreement provided Cinemex with a right to conduct a physical inspection at Closing.

19. Whether Cinemex waived the right to rely upon any failure of access under Sections 7.2 or 7.9 of the Agreement as a basis to refuse to close.

20. Whether Cinemex waived the right to a physical closing in Houston.

21. Whether Cinemex waived the right to enforce any covenants under Article 7 of the Agreement.

22. The purpose of the Agreement as contemplated by Articles 2 and 3 of the Agreement.

23. Whether Cinemex's breach of the Agreement excused Mr. Khan and the Companies from any performance owed either as a condition to or at Closing.

24. Whether the government orders seeking to reduce the spread of COVID-19, the layoffs of virtually all of the Companies' employees, the closure of all of the theaters, the refusal to accommodate a physical inspection and transition to management, the refusal to delay closing to accommodate travel and workplace restrictions constitute a "Material Adverse Effect"

25. Whether the Khan Parties satisfied Sections 7.2 and 7.9 of the Agreement.

26. Whether the Khan Parties satisfied the representations and warranties contained in Sections 5.16 and of the Agreement or were excused under Article 8 of the Agreement.

27. Whether the frustration of purpose doctrine would exclude obligations to perform under the Agreement.

28. Whether the extent and duration of COVID and/or the pandemic were reasonably foreseeable at the time of formation of the Agreement.

29. The extent to which the Khan Parties are entitled to any damages.

30. Whether the impossibility doctrine would exclude obligations to perform under the Agreement.

31. Whether the Khan Parties' inability to operate the theaters, layoffs of virtually all employees, and inability or refusal to carry on the business in the ordinary course had a "Material Adverse Effect," as defined by the Agreement, and the inherent falsity of this representation as of the Closing Date caused one or more conditions precedent to fail.

32. Whether Cinemex may rely on the failure of any condition to Close if such failure was caused by CInemex's failure to use commercially reasonable efforts, as required by Section 7.4.

33. Whether the Khan parties suffered material and disproportionate impacts of any conditions, events, changes, crisis and disasters, taken as a whole, as compared to other industry participants after the date of the Agreement.

34. Whether the Business was operated in the Ordinary Course.

35. Whether the definition of Ordinary Course is limited to past business practices.

36. Whether the Khan Parties breached the EPA by declaring a repudiation by Cinemex.

We, Patricia B. Tomasco of Quinn Emanuel Urquhart & Sullivan, LLP, attorney for the Reorganized Debtor, and Michael D. Seese of Seese, P.A., attorney for the Khan Parties, certify that we have met to discuss settlement and that a good faith settlement attempt has been made.

STIPULATED AND AGREED TO BY:

| | |
|---|---|
| /s/ Patricia B. Tomasco | /s/ Michael D. Seese |
| Patricia B. Tomasco (admitted *pro hac vice*) | Michael D. Seese |
| Quinn Emanuel Urquhart & Sullivan, LLP | Seese, P.A. |
| 711 Louisiana, Suite 500 | FBN 997323 |
| Houston, Texas 77002 | Seese, P.A. |
| Telephone: 713-221-7000 | 101 NE 3rd Avenue |
| Facsimile: 713-221-7100 | Suite 1270 |
| Email: pattytomasco@quinnemanuel.com | Fort Lauderdale, FL 33301 |
| | Tel. (954) 745-5897 |